## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ERIE INSURANCE EXCHANGE

    Plaintiff,

v.                                                                    C.A No.:  1:08-cv-00665

INHO KO,

    Defendant.

## PLAINTIFF'S OPPOSITION TO DEFENDANT INHO KO'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO PROPER VENUE

COMES NOW, the Plaintiff Erie Insurance Exchange, by and through its attorneys, McCarthy Wilson LLP and Matthew S. Tidball, and hereby files the following Opposition to Defendant Inho Ko's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to Proper Venue, and for reasons states:

1.    The captioned case is a professional malpractice action arising out of Defendant Ko's failure to provide workers compensation insurance to Bang Chul Park. Plaintiff also alleges Defendant Ko failed to properly advise and/or misinformed Bang Chul Park as to the extent of the workers' compensation insurance that was provided.

2.    Defendant Ko files the instant Motion alleging that venue is improper in the District of Columbia.

3.    In response, Plaintiff references hereto, incorporates herein, and directs this Court's attention to the attached Memorandum of Points and Authorities in Support of

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

Plaintiff's Opposition to Defendant Inho Ko's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to Proper Venue.

WHEREFORE, Plaintiff requests this Honorable Court deny Defendant Ko's Motion to Dismiss.

Respectfully Submitted,

/s/ Matthew S. Tidball
Matthew S. Tidball, Esq. #489586
100 S. Washington Street
Rockville, Maryland 20850
(301) 762-7770
tidballm@mcwilson.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May, 2008, a copy of the foregoing Plaintiff's Opposition to Defendant Inho Ko's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to Proper Venue, was filed and delivered electronically, to:

Edward J. Tolchin
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
*Attorney for Defendant Ko*

/s/ Matthew S. Tidball
Matthew S. Tidball, Esq.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIE INSURANCE EXCHANGE | |
| Plaintiff, | |
| v. | C.A No.:  1:08-cv-00665 |
| INHO KO, | |
| Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT INHO KO'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO PROPER VENUE

## I. INTRODUCTION

The instant case is an action for professional malpractice.  Plaintiff alleges that Defendant Ko negligently failed to procure workers' compensation insurance in the District of Columbia for Bang Chul Park.  Plaintiff also alleges that Defendant failed to properly inform Bang Chul Park about the extent of his workers' compensation insurance coverage.  Bang Chul Park has assigned his interests in this case to Plaintiff Erie Insurance Exchange.  The underlying occurrence that has lead to the above captioned matter, involved a severe injury to Mr. Hyunmin Kang while he was working as an employee of Bang Chul Park in the District of Columbia.  Mr. Park was at all times relevant hereto doing business as Image Remodeling Contractors.

Mr. Park was a subcontractor of Key Woodworking, Incorporated.  Erie Insurance is the workers' compensation insurer for Key Woodworking.  Mr. Kang filed his workers' compensation claim in the District of Columbia under the D.C. Workers'

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

Compensation Act. Subsequent to this accident it was determined that CNA Insurance provided workers' compensation insurance coverage to Mr. Park through an assigned risk policy in the Commonwealth of Virginia. CNA denied coverage to Mr. Park for this claim as the policy excluded accidents in the District of Columbia. The CNA policy application was prepared by and purchased through Defendant Ko. (*See* Exhibit 1 – Deposition of Inho Ko at 13-15).

As a result of Mr. Park having no workers' compensation insurance for this claim, Mr. Hyunmin Kang looked to the statutory employer, Key Woodworking, for insurance coverage. Erie Insurance paid the claim as the insurer for Key Woodworking. Erie Insurance then filed a subrogation action against Mr. Park d/b/a Image Remodeling Contractors. A judgment was entered against Mr. Park who then assigned any claims he may have had to Plaintiff Erie Insurance, including the instant action.

## II. ARGUMENT

Upon information and belief, Defendant is correct that the services rendered by Defendant Ko in this case physically took place in Virginia. However, what Defendant does not consider is the effects of those acts or omissions on other venues and Defendant's rooted contact with those venues. In that regard, Defendant's omissions and/or failure to provide proper insurance coverage in the District of Columbia, occurred in the District of Columbia.

A. Venue is proper in the District of Columbia.

Defendant freely admits that he is licensed to sell insurance in the District of Columbia. Defendant is attempting to reap the benefits of the laws of the District of

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

2

Columbia by maintaining a license to sell insurance there, but declines to live up to his responsibilities or answer to that venue when his professional services are called into question.

Further, to date, the entirety of the underlying litigation and jurisdictional law, has been that of the District of Columbia. The claim by the injured employee, Hyunmin Kang, was validly brought in the District of Columbia under the District of Columbia Workers' Compensation Act. When Erie Insurance was required under District of Columbia law to provide insurance benefits as the insurer for the general contractor/statutory employer, it brought suit against the subcontractor, Bang Chul Park, in the District of Columbia.

The case law cited by Defendant notes that venue is not necessarily proper where the economic harm was incurred. While it is true that Mr. Park incurred damages in the District of Columbia, this is not the basis of venue Plaintiff's assert. Rather, Defendant's omissions had a direct effect on the law of the District of Columbia. Although Defendant pleads ignorance in knowing that Mr. Park would perform work in the District of Columbia, this ignorance was a result of his own negligent acts; in essence, burying his head in the sand and hoping for the best. Case in point is the Certificate of Insurance which was provided by Defendant to Mr. Park to show that Mr. Park had obtained workers' compensation insurance for the "Kennedy-Warren Apt" job. (See Exhibit 2 – Certificate of Insurance). Defendant admitted in deposition testimony in litigation preceding this case that he did not ask Mr. Park where the Kennedy-Warren Apartments were located and "just assumed because Key Woodworking, Incorporated is in Virginia,

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

3

Virginia company, so it could be in Virginia." (Exhibit 1 at 18-21). This is certainly a large assumption to make for a corporation that is located inside of the Capital Beltway.

Perhaps the strongest evidence of venue being proper in the District of Columbia is Defendant Ko's frank admission that he specifically told Mr. Park that there was coverage in the District of Columbia.

> Q (Thomas Ryan): At any time before this claim this case is about, did you know that Mr. Park's company was doing work in Washington, D.C.?
> A (Inho Ko): He never mentioned he was working in Washington, D.C.; however, he asked me whether his insurance covers work done in Washington, D.C.
> Q:    What did you tell him?
> A:    Yes, I told him it's covered but not on a continuing basis, but short term, you know, here and there, for short term.

(Exhibit 1 at 13-14). Defendant Ko was even more forthcoming when asked about how the insurance application was filled out:

> Q:    Did you go over all these questions with Mr. Park?
> A:    No, I didn't do everything because some of them are difficult to translate.
> Q:    Did you ask Mr. Park specifically whether his employees would travel out of state?
> A:    No, I don't think I did.
> Q:    Did he tell you where any of his jobs were located?
> A:    He told me most of his work is done in Virginia.
> Q:    Does that mean he told you some of it was not in Virginia?
> A:    Yes.

Exhibit 1 at 15-16.

Defendant markets himself as an insurance agent licensed to sell insurance in the District of Columbia. He was specifically asked by his client, Mr. Park, whether this insurance would cover work performed in the District of Columbia. Defendant Ko confirmed that it would. Mr. Kang, in reliance upon this representation then began work at a construction site in the District of Columbia. As noted above, Mr. Park even

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

4

requested a Certificate of Insurance from Defendant Ko for the Kennedy-Warren Apartments site, which Defendant Ko provided without asking where the Kennedy-Warren Apartments site was located. In any event, Defendant Ko would likely admit that this would not have been relevant to him anyway, given his previous statement to Mr. Park indicating that the policy covered work in the District of Columbia.

Based on all the above, Defendant Ko must admit that his actions had a direct effect and presence in the District of Columbia. As a result, venue is the District of Columbia is proper. In *Precept Med. Prods. v. Klus*, 282 F. Supp. 2d 381, (W.D.N.C. 2003) the Court in that case held that venue was proper in North Carolina when the Defendant could "easily have foreseen that his alleged actions would cause injury" in that District. *Id.* at 388. *See also, General Latex and Chemical Corp. v. Phoenix Medical Tech., Inc.*, 765 F. Supp. 1246 (W.D.N.C. 1991) (holding "that a South Carolina corporation's failure to pay for goods shipped from western North Carolina established venue in the Western District of North Carolina even though the actual omission occurred in South Carolina."). *See Precept, supra*, at 388.

This is not to say that venue is founded solely on where the damages occur. In many circumstances this would not be a fair or foreseeable result. Rather, the distinction is that the defendants in *Precept* and *General Latex* could have foreseen injury in the venues where suit was filed. This is the exact situation in the case at bar. Mr. Park specifically inquired whether there was insurance coverage in the District of Columbia from a licensed insurance agent in the District of Columbia. Defendant Ko should easily have been able to recognize that if there was no such coverage and he advised otherwise,

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

Mr. Park would be injured in the District of Columbia as a direct result of Defendant Ko's omissions.

As a result, Defendant Ko's actions and/or omissions satisfy the venue provisions of U.S.C.S §1981 in that suit has been filed in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."[1]

### B.  The Eastern District of Virginia is not inconvenient to the parties.

Defendant contends, in the alternative, that the Eastern District of Virginia is a more convenient forum for the litigation.  As discussed above, if Defendant Ko committed a tort, a substantial portion occurred in the District of Columbia.  In addition, the District of Columbia has an interest in this case because it is alleged that Defendant Ko, an insurance agent licensed in the District, negligently performed his duties in providing insurance coverage.

Further, transferring the case from the United States Courthouse in Washington, D.C., approximately ten miles to the Eastern District of Virginia in Alexandria, Virginia, can hardly be said a great burden on any of the parties.  Certainly, this is not the type of inconvenience that should override the Plaintiff's choice of forum, which is entitled to great deference.  *See, e.g., McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33 (D.D.C. 2003) (noting that in a pharmaceutical products liability action filed in the District of

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

---

[1] *See also, Prod. Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 798 (E.D. Va. 2004). "As the Fourth Circuit recently noted in *Mitrano v. Hawes*, 377 F.3d 402 (4th Cir. 2004), section 1391(a)(2) was added in 1990 as a replacement for a similar subsection permitting venue in the judicial district 'in which the claim arose.' The purpose of the 'substantial part' language, *Mitrano* explains, was to eliminate the need to identify the district having the most significant connection to the claim at issue. Under the new statute, therefore, venue may be proper in more than one district. Accordingly, in determining whether events or omissions are sufficiently 'substantial' to support venue, a court should 'not focus only on those matters that are in dispute or that directly led to the filing of the action,' but rather 'should review 'the entire sequence of events underlying the claim." *Id.* at 798. (Internal citations omitted).

6

Columbia, in which Plaintiff lived in North Carolina, it would be more convenient for the parties and witnesses, including obtaining the testimony of Plaintiff's North Carolina prescribing and treating physicians who also resided in North Carolina, if the case were transferred to North Carolina). *Id.* at 39. *See also*, *FTC v. Cephalon,* Inc., 2008 U.S. Dist. LEXIS 34390 (D.D.C. Apr. 28, 2008) ("[A] plaintiff's choice of forum is ordinarily a 'paramount consideration' that is entitled to 'great deference' in the transfer inquiry." (citing *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.,* 196 F. Supp. 2d 21, 31 (D.D.C. 2002).

Finally, Defendant has not alleged that he will not be able to have witnesses attend trial in the District of Columbia, or that he will not have access to necessary sources of proof. Therefore, he has no just cause to remove the case to another District due to inconvenience. As a result, Defendant's arguments to transfer the case to the Eastern District of Virginia for convenience fail as well.

## III. CONCLUSION

Based upon the foregoing, Defendant's Motion to Dismiss, or in the alternative, to Transfer Venue, fails and must be accordingly denied.

Respectfully Submitted,

/s/ Matthew S. Tidball
Matthew S. Tidball, Esq. #489586
100 S. Washington Street
Rockville, Maryland 20850
(301) 762-7770
tidballm@mcwilson.com
*Attorneys for Plaintiff*

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May, 2008, a copy of the foregoing Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant Inho Ko's Motion to Dismiss for Improper Venue Or, in the Alternative, to Transfer to Proper Venue, was filed and delivered electronically, to:

> Edward J. Tolchin
> Fettmann, Tolchin & Majors, P.C.
> 10509 Judicial Drive, Suite 300
> Fairfax, VA 22030
> *Attorney for Defendant Ko*

/s/ Matthew S. Tidball
Matthew S. Tidball, Esq.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

Derenberger & Page Reporting, Inc
1430 "S" Street, N.W. Washington, DC 20009-3854

COPY

Page 1

```
 1              DISTRICT OF COLUMBIA GOVERNMENT

 2             DEPARTMENT OF EMPLOYMENT SERVICES

 3            OFFICE OF HEARINGS AND ADJUDICATION

 4      ------------------------------x

 5  HYUNMIN KANG,                      :

 6             Claimant,               :

 7      v.                             :  OWC NO.: 602600

 8  IMAGE REMODELING,                  :  OHA NO.: 04-454

 9  and                               :

10  COMPANION PROPERTY & CASUALTY      :

11  GROUP,                             :

12  and                               :

13  KEY WOODWORKING,                   :

14  and                               :

15  ERIE INSURANCE GROUP,              :

16  and                               :

17  CLARK CONSTRUCTION CO.,            :  November 4, 2004

18             Employers/Carriers      :  Washington, D.C.

19      ------------------------------x

20  DEPOSITION OF:

21                    INHO KO,

22  called for oral examination by counsel for the
```

(202) 265-3035
Fax (202) 265-0240

132c3a34

PLAINTIFF'S
EXHIBIT
_____/

Derenberger & Page Reporting, Inc
1430 "S" Street, N.W. Washington, DC 20009-3854

Page 2

```
1   Employers/Carriers, at 1101 17th Street N.W.,
2   Suite 700, Washington, D.C., beginning at 2:11 p.m.,
3   Thursday, November 4, 2004, before Lohna Esteb,
4   Court Reporter and Notary Public,
5   when were present:
6
7   ON BEHALF OF THE CLAIMANT:
8       ALLEN J. LOWE, ESQUIRE
9       ASHCRAFT & GEREL LLP
10      2000 L Street, N.W.
11      Suite 400
12      Washington, D.C. 20036
13      (202) 783-6400
14
15  ON BEHALF OF IMAGE REMODELING
16      PRO SE
17
18
19
20
21
22
```

Page 4

```
1   ON BEHALF OF ERIE INSURANCE GROUP:
2       ROBERT C. BAKER, JR., ESQUIRE
3       DOBBS & BAKER
4       110 North Washington Street
5       Suite 404
6       Rockville, Maryland 20850
7       (301) 251-7730
8       email: RobertCBakerJr@aol.com
9
10  ON BEHALF OF CLARK CONSTRUCTION GROUP, INC.:
11      TODD SAPIRO, ESQUIRE
12      FRIEDLANDER, MISLER, SLOAN,
13      KLETZKIN & OCHSMAN PLLC
14      1101 17 Street N.W.
15      Suite 700
16      Washington, D.C. 20036
17      (202) 872-0800
18  Also present:
19      Michelle Overbay
20      Bang Chul Park
21  Interpreter: Myung Oh
22      (301) 229-1733
```

Page 3

```
1   ON BEHALF OF COMPANION PROPERTY & CASUALTY GROUP:
2       TIMOTHY E. MCLAUGHLIN, ESQUIRE
3       HERWIG & HUMPHEYS LLP
4       The Blaustein Building, Suite 700
5       One North Charles Street
6       Baltimore, Maryland 21201
7       (410) 539-0906
8       email: tim_mclaughlin@herwigandhumphreys.com
9
10  ON BEHALF OF KEY WOODWORKING:
11      THOMAS PATRICK RYAN, ESQUIRE
12      MATTHEW S. TIDBALL, ESQUIRE
13      MCCARTHY WILSON
14      100 South Washington Street
15      Rockville, Maryland 20850
16      (301) 762-7770
17      email: ryant@mcwilson.com
18
19
20
21
22
```

Page 5

```
1               INDEX
2           EXAMINATION ON BEHALF OF
3           EMPLOYERS/CARRIERS:
4   WITNESS:          (Mr. Ryan) (Mr. McLaughlin)
5   Inho Ko           6, 33        30
6
7           INDEX TO EXHIBITS
8   EXHIBIT NO.:              PAGE:
9   1                    16
10  2                    25
11  3                    26
12
13
14
15
16
17
18
19
20
21
22
```

2 (Pages 2 to 5)

132c3a34-a64d-431c-af60-5cb408f93167

Derenberger & Page Reporting, Inc
1430 "S" Street, N.W. Washington, DC 20009-3854

Page 10

1  assigned of this case. So once it's assigned, I do
2  service dealing with claims and things like that.
3     Q   Do you have any written document between
4  yourself and Companion Property & Casualty?
5     A   No, there wasn't any.
6     Q   How did you meet Bang Chul Park?
7     A   He called me. I don't know exactly when,
8  but he called me and that's how I got to know him.
9     Q   What did he ask you to do for him?
10    A   At first he asked for the workers'
11 compensation insurance.
12    Q   Did you prepare an application for
13 insurance for him?
14    A   Yes.
15    Q   I am going to show you what we marked as
16 Exhibit 1.
17       Do you recognize this?
18    A   Yes.
19    Q   How did you go about preparing that
20 document?
21    A   Before this, there was another coverage.
22 But that has been cancelled, and there's a new one.

Page 11

1     Q   Do you have another application that's
2  prior to that date?
3     A   Yes.
4     Q   Do you have that with you?
5     A   I don't have it with me.
6     Q   Who was the first application submitted
7  to?
8     A   First one, same as Mr. Park Bang Chul and
9  CCI.
10    Q   What insurance company originally issued
11 his workers' compensation insurance?
12       INTERPRETER: Can you rephrase?
13 BY MR. RYAN:
14    Q   What insurance company issued Mr. Park's
15 first insurance policy?
16    A   I don't -- I'm not 100 percent sure, but I
17 believe it could be Southern Insurance Company of
18 Virginia.
19    Q   I'm sorry?
20    A   Southern Insurance Company.
21    Q   Southern?
22    A   Yes, of Virginia.

Page 12

1     Q   Do you know when that policy was
2  cancelled?
3     A   In about middle of 2003. I don't remember
4  for sure.
5     Q   Do you know why it was cancelled.
6       MR. RYAN: Tell us what he said so far.
7       THE WITNESS: Audited, and then premium
8  was not paid.
9  BY MR. RYAN:
10    Q   Audited and then premium not paid?
11    A   Audit -- I need clarification because a
12 year after premium was paid, there usually an audit.
13 SO an audit was not done and premium was not paid.
14 And there may be another reason, but I don't
15 remember for sure.
16    Q   Did you then take another application from
17 Mr. Park for insurance?
18    A   Yes.
19    Q   Is that the document that you are looking
20 at now?
21    A   Yes, that's correct.
22    Q   Did the first application, was it on the

Page 13

1  same type of form?
2     A   Same form, yes.
3     Q   The first application, did Mr. Park tell
4  you about his business?
5     A   Yes.
6     Q   Did he tell you where he was doing work?
7     A   Yes.
8     Q   Did he tell you what states he would do
9  work in?
10    A   Nothing -- he didn't means specifically
11 Virginia; but, Virginia.
12    Q   Did you know when you took the first
13 application that he also did work in Washington,
14 D.C.?
15    A   I didn't know.
16    Q   When you took the second application, did
17 you know that he was doing work in Washington, D.C.?
18    A   No, I didn't know.
19    Q   At any time before this claim that this
20 case is about, did you know that Mr. Park's company
21 was doing work in Washington, D.C.?
22    A   He never mentioned he was working in

(202) 265-3035
Fax (202) 265-0240

132c3a34-a64d-431c-af60-5cb408f93167

Derenberger & Page Reporting, Inc
1430 "S" Street, N.W. Washington, DC 20009-3854

Page 14

1   Washington, D.C.; however, he asked me whether this
2   insurance covers work done in Washington, D.C.
3      Q    What did you tell him?
4      A    Yes, I told him it's covered but not on a
5   continuing basis, but short term, you know, here and
6   there, for short term.
7      Q    What did you mean by short term?
8      A    You see, short term is not an accurate
9   expression, either, because what I meant was instant
10  contract.  But when I use that in Korean, I use it
11  short term or for a short time, things like that.
12     Q    Now you've lost me.  Instant what?
13     A    Instant work.
14     Q    Instant work.  What do you mean by instant
15  work?
16     A    First of all, it's not long, has no
17  definite time period of either one week or one month
18  or anything like that.  So in, generally speaking,
19  or generally thinking, it's a very short time, not
20  in terms of months or weeks; but, you know, day or
21  two.
22     Q    Where did you get the information that he

Page 15

1   would be covered for this short period of time?
2      A    I was trained in that way.  And although I
3   don't remember exactly which insurance company, but
4   when I was talking with insurance companies, I heard
5   that instant work is covered.
6      Q    Did you go over all of the questions on
7   that exhibit with Mr. Park?
8      A    Yes, I did.  Yes, I did explain to him that
9   saying to him that he, himself, is excluded from
10  this, and other things that he wanted to know.
11     Q    Look at the second page of this document.
12  See all the questions listed under "General
13  Information."
14        Did you go over all these questions with
15  Mr. Park?
16     A    No, I didn't do everything because some of
17  them are difficult to translate.
18     Q    Did you ask Mr. Park specifically whether
19  his employees would travel out of state?
20     A    No, I don't think I did.
21     Q    Did he tell you where any of his jobs were
22  located?

Page 16

1      A    He told me most of his work is done in
2   Virginia.
3      Q    Does that mean he told you some of it was
4   not in Virginia?
5      A    Yes.
6      Q    Did he tell you where this other work was
7   located that was not in Virginia?
8      A    As I remember it now, at the time,
9   Mr. Park was not sure what was going to happen in
10  the future.
11     Q    What about as of the time of that
12  application, which is in November of 2003, did he
13  tell you what other states he was doing work in?
14     A    No.
15        ( Ko Exhibit No. 1  marked
16  for identification)
17  BY MR. RYAN:
18     Q    I am going to show you what we marked as
19  Exhibit No. 1.  Do you recognize that insurance
20  policy?
21     A    Yes.
22     Q    Was that policy issued to Mr. Park?

Page 17

1      A    Yes, correct.
2      Q    Did you get a copy of it?
3      A    Yes.
4      Q    Once the policy was issued, did you
5   discuss it at all with Mr. Park?
6      A    I told him his insurance policy has been
7   issued.
8      Q    Mr. Park gave us a different policy today
9   which was marked as Exhibit 2 in his deposition.
10        You recognize that insurance policy?
11     A    Yes, I do.
12     Q    That policy appears to be written with
13  Penn-America Insurance Company, correct?
14     A    Yes.
15     Q    Was this for liability insurance coverage,
16  general liability?
17     A    Yes, correct.
18     Q    The first policy, Exhibit 1, that's his
19  workers' compensation insurance?
20     A    Yes.
21     Q    Did Mr. Park ask you for certificates of
22  insurance for any contracts?  Let me try that again.

(202) 265-3035
Fax (202) 265-0240

132c3a34-a64d-431c-af60-5cb408f93167

Derenberger & Page Reporting, Inc
1430 "S" Street, N.W. Washington, DC 20009-3854

Page 18

1      Did Mr. Park ever ask you to get a
2  certificate of insurance so he could prove he had
3  insurance?
4      A   Yes.
5      Q   I am going to show you what we've marked
6  as Exhibit 4.
7      Do you recognize that?
8      A   Yes.
9      Q   What is it?
10     A   This is certificate of insurance.
11     Q   How did it come about that that document
12  was prepared?
13     A   As I remember it, it was after general
14  liabilities were issued to Mr. Park.  General --
15  after general liability insurance was applied for.
16     Q   Did he tell you why he needed this?
17     A   He told me that he needed this to work for
18  Key Woodworking.
19     Q   Did he tell you he needed proof of
20  workers' compensation insurance, also?
21     A   Yes.
22     Q   Did you prepare this document?

Page 19

1      A   Yes.
2      Q   Do you see the description where it says
3  Kennedy-Warren Apartments?
4      A   Yes.
5      Q   Who gave you that information?
6      A   Mr. Park provide that to me.  Mr. Park
7  told me that, at this column, please write
8  Kennedy-Warren Apartments.
9      Q   Did he tell where you that job was
10  located?
11     A   No, he didn't.
12     Q   Did you know where the Kennedy-Warren
13  Apartments were, whether they were in Virginia or
14  D.C. or where they were?
15     A   I did not know. At the time -- at the time
16  I put Kennedy-Warren Apartment, I thought it was in
17  Virginia because Key Woodworking also is in Virginia
18  company.
19     Q   But you didn't ask Mr. Park specifically
20  where the apartments were located?
21     A   No, I did not ask and he did not tell me.
22     Q   Did you think it was important when you

Page 20

1  did the certificate to know whether the job was in
2  Virginia?
3      A   Could you tell me again?
4      Q   Sure. Did you think it was important to
5  find out when you did the certificate whether that
6  job was in Virginia?
7      A   No, I did not think so.  I just assumed
8  because Key Woodworking, Incorporated, is in
9  Virginia, Virginia company, so it could be in
10  Virginia.
11     Q   Where did you send the certificate of
12  insurance after you prepared it?
13     A   I send it to the fax number below.
14     Q   To Key Woodworking?
15     A   I believe so.
16     Q   Did you send a copy of this to Companion
17  Insurance?
18     A   No, I did not send it.  I kept it.
19     Q   Did you ever provide any other
20  certificates of insurance to Mr. Park?
21     A   I remember giving him another certificate.
22  I don't exactly know for what, but I remember giving

Page 21

1  him one more.
2      Q   Do you know where that job was located?
3      A   I don't remember clearly.  I have to look
4  for my file.
5      Q   Before this claim involving Mr. Kang, had
6  Mr. Park ever presented any other workers'
7  compensation claims?
8      A   You mean with Companion?
9      Q   Yes.
10     A   No.
11     Q   Had he presented any other workers'
12  compensation claims for any insurance company?
13     A   Once there was.
14     Q   To what company was that claim submitted?
15     A   It was same assignee risk. I can't
16  remember the exact name.
17     Q   Did Mr. Park tell you about this claim
18  that's been brought by Mr. Kang?
19     A   Yes.
20     Q   How did he report it to you?
21     A   Mr. Park called me, and as I remember it
22  was Friday.  If I remember correctly, the first

6 (Pages 18 to 21)

132c3a34-a64d-431c-af60-5cb408f93167

# CERTIFICATE OF INSURANCE

| | |
|---|---|
| **PRODUCER**<br><br>INHO KO, MBA, CFP<br>7611 LITTLE RIVER TNPK<br>ANNANDALE, VA 22003 | **ISSUE DATE**<br>12/04/2003<br><br>THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHT UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

**COMPANIES AFFORDING COVERAGE**

| | |
|---|---|
| A | Companion Property & Casualty Insurance Company |
| B | TAPCO |
| C | |
| D | |
| E | |

**INSURED**

Bang Chul Park
7704 DONNYBROOK CT
ANNANDALE, VA 22003

**COVERAGES**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | ALL LIMITS IN THOUSANDS | |
|---|---|---|---|---|---|---|
| B | **GENERAL LIABILITY**<br>x  COMMERCIAL GENERAL LIABILITY<br>  CLAIMS MADE  x  OCCURANC<br>  OWNER'S & CONTRACTOR'S PROT. | 10925710 | 12/17/2003 | 12/17/2004 | GENERAL AGGREGATE | $2,000,000 |
| | | | | | PRODUCTS-COM/OPS AGGREGATE | $1,000,000 |
| | | | | | PERSONAL & ADVERTISING INJURY | $1,000,000 |
| | | | | | EACH OCCURANCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ |
| | | | | | MEDICAL EXPENSE (Any one person) | $ |
| | **AUTOMOBILE LIABILITY**<br>  ANY AUTO<br>  ALL OWNED AUTOS<br>  SCHEDULED AUTOS<br>  HIRED AUTOS<br>  NON-OWNED AUTOS<br>  GARAGE LIABILITY | | | | COMBINED SINGLE LIMIT | $ |
| | | | | | BODILY INJURY(Per person) | $ |
| | | | | | BODILY INJURY(Per accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | **EXCESS LIABILITY**<br>  OTHER THAN UMBRELLA FORM | | | | EACH OCCURRENCE  $       AGGREGATE  $ | |
| A | **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | WVA0096860 | 11/26/03 | 11/26/04 | STATUTORY | |
| | | | | | $ 100,000 (EACH ACCIDENT) | |
| | | | | | $ 500,000 (DISEASE-POLICY LIMIT) | |
| | | | | | $ 100,000 (DISEASE-EACH EMPLOYEE) | |
| | **OTHER** | | | | | |

DISCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/RESTRICTIONS/SPECIAL ITEMS

Kennedy-Warren Apt

**PLAINTIFF'S EXHIBIT**<br><br>2

| **CERTIFICATE HOLDER** | **CANCELLATION** |
|---|---|
| KEY WOODWORKING, INC<br>6714-A INDUSTRIAL RD<br>SPRINGFIELD, VA 22151<br>F 703-914-2529 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.<br><br>AUTHORIZED REPRESENTATIVE |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ERIE INSURANCE EXCHANGE

    Plaintiff,

                       C.A No.:  1:08-cv-00665

v.

INHO KO,

    Defendant.

## ORDER

UPON CONSIDERATION of Plaintiff's Opposition to Defendant Ko's Motion to Dismiss for Improper Venue or, in the alternative, to Transfer to Proper Venue, any reply thereto, and for good cause shown, it is this ___ day of _____, 2008 by the United States District Court for the District of Columbia, hereby

ORDERED that Defendant Ko's Motion to Dismiss for Improper Venue or, in the alternative, to Transfer to Proper Venue, is hereby DENIED.

SO ORDERED.

 

_____
Judge, United States District Court for the
District of Columbia

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
100 SOUTH WASHINGTON ST.
ROCKVILLE, MD 20850
(301) 762-7770

**Copies to:**

Edward J. Tolchin
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
*Attorney for Defendant Ko*

Matthew S. Tidball, Esq.
McCarthy Wilson LLP
100 S. Washington Street
Rockville, Maryland 20850
*Attorneys for Plaintiff*